DOHERTY VS ARKANSAS & OKLAHOMA RAILROAD CO.

Opinion delivered October 19, 1904.

1. *Railroads—Subscription Contract—Ultra Vires—Estoppel.*
   A railroad chartered under the laws of the state of Arkansas to build a line of road between points within that state extended same into Indian Territory and obtained subscriptions from parties payable

upon the completion of the road to certain points in the Territory *Held,* that such contract, being within the general scope of the company's powers cannot be attacked by a party thereto as being ultra vires.

2.  *Evidence—Questions of Fact—Directing Verdict.*

    The fact of the existence of a subscription agreement and its performance by the contracting parties is a question for the jury; and where there was some evidence touching these questions, the court could not direct a verdict.

3.  *Appeal—Instructions—Not Specifically Assigned as Erroneous, not Considered.*

    An alleged errors in the giving of certain instructions, which are not specifically set out in full in the assignments of error are entitled to no consideration.

4.  *Railroads—Suit on Subscription Contract—Evidence.*

    In a action to enforce payment of a subscription to a railroad company where the only conditions of the contract were that the extension of the road to the point indicated should be of standard gauge laid with steel rails of not less than 60 pounds to the yard, all material to be new and the subscription to become due when the road was completed to a certain point and the first train run thereon, evidence as to the interest of the railroad in the town was immaterial and properly excluded.

5.  *Railroads—Suit on Subscription—Evidence.*

    In an action to enforce a subscription for building a extension of a railroad, evidence as to whether the company put in ties after the claimed completion of the road, and whether it had a schedule for its trains, and as to the speed of its trains, was all immaterial and properly excluded. But evidence as to the acceptance of the subscription on proposition and the commencement of work was material and proper.

6.  *Railroads—Suit on Subscription—Evidence.*

    In an action to enforce a subscription for building an extension of a line of railroad, evidence as to a change in the character of the steel rails made after the completion of the road to the designated point.

and as to whether the company worked on the track after the specified date of completion, was all immaterial, and properly excluded.

7. *Railroads—Suit on Subscription—Instructions.*

In an action to enforce a subscription agreement for extending a line of railroad, an instruction that if the defendant subscribed, with others, to induce the railroad to build its extension, and the company accepted same, began and completed the work, then the defendant is bound and cannot afterward withdraw and release himself from liability, clearly stated the law applicable to the case.

8. *Railroad—Subscription Agreement—Implied Acceptance—Instructions.*

Where a subscription for purpose of inducing the extension of a line of railroad was acted upon by the railroad company, completed the same to the point and within the time designated, without any notice of the dissatisfaction of the subscriber, the railroad company are not bound to formally notify the subscriber that the subscription was accepted, and an instruction covering such requirement was properly refused.

9. *Railroads—Subscription Agreement—Consideration.*

Any benefit accruing to one making a promise, or any loss, trouble or disadvantage undergone by, or charge imposed on him to whom it is made is a sufficient consideration to sustain a promise; and the extension of the railroad line to the town of defendant's residence is a sufficient consideration to sustain his subscription.

10. *Instructions—On Matters Foreign to Issues, Refused.*

Instructions upon propositions not mentioned in the pleadings, and foreign to the issues in the case, are properly refused.

11. *Railroads—Subscription—Substantial Compliance, Necessary.*

In an action to enforce a subscription to a railroad, it was only necessary for the railroad company to recover thereon, to show a substantial compliance with the contract.

12. *Railroads—Subscription Agreement Recission—Instruction.*

In an acton to enforce a subscription for the extension of a railroad a charge that if, after the subscription contract was signed, a new writing was demanded by the company coupled with a threat that if

not given the company would not build the road, the defendant had a right to consider the former agreement at an end, and withdraw his original promise in such a way as to notify the company, and the company could not afterward enforce his original subscription, was correct but a proviso added by the court, that such demand and withdrawal by defendant must have been made before plaintiff had acted thereon by arranging for and commencing the construction of the road, was unnecessary and erroneous.

13.  *Instructions—Erroneous but not Prejudicial, not Ground for Reversal.*

   Instructions, though erroneous which do not affect materially the substantial rights of the appellant, are not sufficient to cause a reversal.

14.  *Instructions—Specific Charges, Covered by Others Given, Refused.*

   Specific instructions, requested by appellant, though correct, will not be given, when covered by other instructions already given.


Appeal from the United States Court for the Northern District.


JOSEPH A. GILL, Judge.


Action by the Arkansas & Oklahoma Railroad Company against W. H. Doherty. Judgment for plaintiff. Defendant appeals. Affirmed.


On the 18th day of November, 1901, plaintiff below (appellee here) filed its complaint, and alleged that it is a corporation, and that the defendant below (appellant here) is indebted to plaintiff in the sum of $650, with interest from December 31, 1900, upon a subscription made by defendant, which is lost, in consideration that plaintiff should extend its line into the Cherokee Nation, and build a railroad to the town of Grove, Ind. Ter., the same to be due and payable as follows, viz.:  One-half six months after date, or as soon thereafter as all of said

extension is graded into and through the town of Grove, Ind. Ter.; second one-half ten months after date, or as soon thereafter as said road is completed to said town of Grove, Ind. Ter., and first train is run thereon. Should this not be paid when due, to bear 8 per cent. interest thereafter. This obligation to be null and void should said road not be completed to said town of Grove on or before December 31, 1900. Plaintiff alleges it complied with the terms of its contract, and that defendant has refused to pay his said subscription, and therefore it asks judgment.

On February 12, 1903, defendant filed his amended answer, and says he has not sufficient information to either admit or deny that plaintiff is a corporation, and avers the fact to be that, if the plaintiff was a corporation, it did not have, under its charter, a right to build a road into the Indian Territory or to Grove, Ind. Ter., or through the same. Defendant denies that any such contract was ever entered into between plaintiff and defendant as alleged, admits he signed a subscription, but says same was never acted upon by plaintiff, and says the one alleged by plaintiff is not a copy or the substance of the same. Defendant excepts to any evidence of contract alleged, because it was not stamped or authorized to be stamped as required by law. Defendant denies plaintiff ever completed its contract as alleged.

On February 14, 1903, plaintiff filed its reply to amended answer, and denies each and every material allegation in defendant's answer; further denies the special allegation in defendant's answer that plaintiff had no authority to build a road in the Indian Territory to Grove, Ind. Ter., and alleges that the said plaintiff did have such authority from the Secretary of the Interior of the United States, as provided by law.

On February 14, 1903, said cause came on for trial before a jury, and on February 17, 1903, the jury returned a verdict as follows: "We, the jury, duly impaneled and sworn in the above-entitled cause, find the issues in favor of the plaintiff and against the defendant, and find that the defendant is indebted to the plaintiff in the sum of $650, with interest at rate of 6 per cent. from Dec. 31, 1900, to date.   D. F. Clark, Foreman."

On February 19, 1903, defendant filed his motion for new trial.   On March 14, 1903, the court overruled the motion for new trial, to which defendant excepts, and the court rendered the following judgment: "And thereupon it is by the court considered and adjudged that, in accordance with the verdict heretofore rendered the plaintiff herein, the Arkansas & Oklahoma Railroad Company, do have and recover of and from the defendant herein, W. H. Doherty, the sum of seven hundred and thirty-four dollars and fifty cents, and all costs herein laid out and expended, the same to be taxed by the clerk, and the judgment to draw six per cent. interest from this date."

Defendant is granted stay of execution, and gave supersedeas bond, and appealed to this court.

*W. H. Kornegay,* for appellant.

*James S. Davenport,* for appellee.

TOWNSEND, J.   The appellant has filed assignments of error, containing 18 specifications, in which objection was made and exceptions saved, the first of which is that "the court erred in refusing to direct the jury to return a verdict for defendant." Appellant insists under this specification, first, that the building of its road into the Indian Territory by plaintiff was ultra vires, and that neither the building of it nor an obligation so to do

would support a promise to pay to plaintiff for so doing; the appellant insisting that, because the charter of the company, as applied for and granted in the state of Arkansas, limits its line as described between points in the territory of Arkansas, therefore, if it builds or contracts to build its line beyond the limits of said state, all its contracts for such extension are ultra vires, notwithstanding the fact that the Secretary of the Interior has granted his permit to the company to build its line in the Indian Territory. Is this a correct definition of ultra vires under the law? If the contract had been made concerning an extension in the state of Arkansas, it would not be insisted that such a contract would be ultra vires; therefore the power to make such a contract was granted to that company. Does ultra vires apply to the place where the contract is made, or to the power in the company, through its officers, to make it? The contract sued upon is not prohibited by the charter of the company. In De La Vergne Refrigerating Company vs German Savings Institution, 175 U. S. 40, 60, 20 Sup. Ct. 20, 44 L. Ed. 66, the contract relied upon was prohibited by its charter, and the court quotes with approval the language used in Central Transportation Co. vs Pullman Palace Car Co., 139 U. S. 61, 11 Sup. Ct. 488, 35 L. Ed. 68, as follows: "A contract of a corporation which is ultra vires in the proper sense—that is to say, outside of the object of its creation, as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature —is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the contract validity, or be the foundation of any right of action on it. When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as any person contracting with it, may be

estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or its action, because such prerequisites might have in fact been complied with.   But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can·be estopped, by assenting to it, or by acting upon it to show that it was prohibited by those laws."   In Green Bay & Minnesota R. R. Co. vs Union Steamboat Co., 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413, the court says:   "But, whatever, under the charter and general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited."   Attorney General vs Great Eastern Ry. Co., 5 App. Cas. 473; Davis vs Old Colony R. Co., 131 Mass. 258, 41, Am. Rep. 221.   One who contracts with a corporation cannot deny its corporate authority in order to defeat the enforcement of its contract.   Mattie D. Falls et al vs United States Loan & Building Co., 97 Ala. 417, 13 South. 25, 24 L. R. A. 154, 38 Am. St. Rep. 194.   Is not the appellant, after making the contract with the appellee, and having the road built into the town of Grove, Ind. Ter., and thereby securing the benefits of the contract, estopped from denying his obligation, especially as the contract made by appellee was within the general scope of the powers conferred upon it by the Legislature?   In Ohio & M: R. R. Co. vs McPherson, 35 Mo. 26, 86 Am. Dec. 128, which was a suit to recover a subscription to the company, the court said:   "But, aside from the question whether the action of the board of directors beyond the bounds of the state was a sufficient expression of assent to give vitality to the corporation, the appellant's position towards the respondent is such as ought to preclude him from denying its corporate existence.   The case of the Dutchess Cotton Manufacturing Company vs Davis, 14 Johns. 238 (7 Am. Dec. 459), was a suit on a promise to pay the price of stock subscribed by the defendant.   The court, on the authority of Henriques vs

The Dutch West India Company, 2 Ld. Raymond, 1535, held that the defendant, having entered into a contract with the plaintiffs in their corporate name, thereby admitted them to be duly constituted a body politic and corporate.  *  *  *  And their authority to act in behalf of the corporation could not be questioned by the appellant in this, a collateral, suit, without showing a judgment of ouster against them in a direct proceeding by the government for that purpose." In Redfield on Railways, vol. 1, p. 202, it is said: "And even where a mere stranger subscribes to a railway company, with others, in order to induce the company to build a station house and improve the roads to it, and to aid the company in such work, and the company perform the condition on their part, the subscription is upon sufficient consideration, and may be enforced against the subscribers." In Kennedy vs Cotton, 28 Barb. 59, which was a suit on a subscription for $50 in consideration that a railroad company would build a depot for the accommodation of travelers, the court said: "The agreement in question clearly imports a request to the company to construct the buildings, and establish and improve the roads specified in the agreement, and a compliance with the request by the company, so far as to construct the depot, which was the consideration, on its part, of the agreement, was a sufficient consideration for the defendant's undertaking. The recent case of Barner vs Perine, 2 Kern. 18, and the cases there referred to, are entirely decisive upon this point, and render any discussion of it unnecessary."

Under this specification appellant further insists that there was no agreement between appellant and appellee, and, if there was an agreement, that the evidence does not show a performance of the same by appellee. There are questions that were very properly submitted to the jury. The court could not take the case from the jury where there was evidence to support

the contention of the appellee. It is error in the trial court to direct the jury to find and give verdict, except in cases where there is no evidence to sustain the cause of action or defense. Little Rock & Fort Smith R. R. Co. vs Henson, 39 Ark. 219; Catlett vs R. R. Co., 57 Ark. 461, 21 S. W. 1062, 38 Am. St. Rep. 254; Little Rock & Fort Smith R. R. Co. vs Barker and Wife, 33 Ark. 350, 34 Am. Rep. 44; Overton vs Matthews, 35 Ark. 147, 37 Am. Rep. 9.

The second specification of error is as follows: "The court committed error in giving contradictory instructions and instructions calculated to confuse the jury. The instructions complained of in this assignment being the entire charge as found on pages 115 to 120 of the transcript, and which the court is asked to consider without compelling the appellant to set it out in full." This is not compliance with the rules of the court, and deserves no consideration whatever. But from a careful reading of the charge given by the court no one able to comprehend the English language clearly and forcibly stated, could regard said instructions as contradictory, or calculated to confuse the jury.

The third specification of error is the refusal of the court to allow witness Bayless to be asked on cross-examination the following: "Was the question of the interest that the Arkansas & Oklahoma Railroad Company should have in the town that would be laid out there discussed at that first meeting?" As the only conditions of the contract were that "said extension be of standard gauge, laid with new steel rails of not less than 60 lbs. per yard, all material to be new," and the subscription should become due when the railroad was completed to the town of Grove, Ind. Ter., and the first train is run thereon, and the subscription to become void if these conditions were not complied with on or before December 31, 1900, it was wholly immaterial

whether the railroad company had any interest in said town or not. Therefore the court ruled correctly.

The fourth specification was the refusal of the court to allow witness Bayless to be asked whether the company did not put in ties after it had completed its road, and whether it had a schedule for its trains; both questions incompetent and immaterial, and were properly excluded by the court.

The fifth specification was permitting the appellee to ask witness Mayes if, when the subscription was deposited in the 'Bank of Southwest City, the company did not accept the proposition, and go to work along that line. This went to the question of liability of appellant on his subscription, and was material, and the court ruled correctly.

The sixth specification was a question as to the speed of the trains run, and was wholly immaterial.

The seventh specification was the refusal of the court to allow appellant to ask several questions, which were irrelevant and immaterial, and were properly excluded. Appellant also excepts to the striking out the following: "Well, they have changed it. The kind they have got there now is old and narrow." This refers to the steel placed on that railroad, and should be considered in connection with what preceded the words stricken out. Both together are as follows: "Q. Do you know the kind of steel that was put on this track, Mr. Remson? A. Yes, sir; it was first-class. Q. What kind is there now? A. Well, they have changed it. The kind they have got there now is old and narrow." It thus appears that the steel originally placed on that track was "first-class," but that subsequently it was changed—by whom does not appear. This objection and exception simply represents the frivolous character of many of the alleged errors.

The eighth specification was the refusal of the court to allow the appellant, while on the stand as a witness, to be asked whether the company worked on the track after December 31 1900. It was properly excluded as immaterial, and appellant also includes an exception which had already been made in his fourth specification.

The ninth specification was the giving of the following instruction: "The court instructs the jury that if the defendant, among others, subscribed to the said railroad company for the purpose of inducing it to build its road into the town of Grove, Ind. Ter., and the representatives of the railroad company accepted the subscription, and acted on the same, and began work, then the court instructs you that the defendant is bound, and could not, at a subsequent date to the time the plaintiff acted upon said subscription, withdraw his subscription, or release himself from the obligation he had undertaken." This instruction is a clear statement of the law applicable to the facts, as appellee contended had been shown in the evidence. 1 Beach, Con. 65. Philomath College vs Hartless, 25 Am. Rep. 511; Bates County vs Winters, 112 U. S. 327, 5 Sup. Ct. 157, 28 L. Ed. 744; Marie vs Garrison, 83 N. Y. 26; Ft. Worth & R. G. Ry. Co. vs Lindsey (Tex. Civ. App.) 32 S. W. 716; Armstrong vs Karshner (Ohio) 24 N. E. 897; Amherst Academy vs Cowls, 6 Pick. 427, 17 Am. Dec. 387.

The tenth specification was the refusal of the court to give the instruction No. 1 requested by appellant, and modifying and giving the same, as follows: "The plaintiff, before it can recover in this case, must prove, first, that the writing sued on by the plaintiff was signed by defendant or his duly authorized agent; second, that the plaintiff accepted the same, or that defendant, after signing the same, allowed the plaintiff to build and complete the road without notifying the plaintiff that he

would not abide by the terms of said writing; third, the road was completed within the time specified and in the manner specified, and the grading of the road should be completed in the manner specified." The only difference between the instruction given and the one refused was the omission from the one given of the following words from the second clause: "and notified defendant of such acceptance, and obligated itself to build the road." The contention of appellant is that, before he could be bound upon his subscription, the appellee must have notified him that it had accepted his subscription and obligated itself to build the road. The appellant has failed to sustain his contention by the citation of any authorities, and the contract of subscription makes no such requirement on the part of appellee. The consideration for the promise was the building of the railroad, and it was to be void if not completed by December 31, 1900. The question of acceptance of the subscription was submitted to the jury as a question of fact, and when accepted and acted upon by appellee, and the road constructed without any notice to appellee that appellant was in any way dissatisfied, is there any justice or equity in permitting appellant to say: "I will not pay. True, the road has been constructed according to the terms of my contract of subscription, and the town of Grove has the road. . Whatever benefits we expected to secure by the building of the road, we have obtained. But I will not pay because you did not notify me that you had accepted my subscription, though, by its terms, you were not required to do so." We are clearly of the opinion that the instruction of the court correctly stated the law. Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by or charge imposed upon him to whom it is made, is a sufficient consideration to sustain a promise. Amherst Academy vs Cowls, 6 Pick. 427, 17 Am. Dec. 387; Barnes vs Perine, 12 N. Y. 18.

The eleventh specification was the refusal of the court to

give an instruction already covered by the general instructions of the court.

The twelfth specification is a request for an instruction upon a proposition not mentioned in the pleadings, and foreign to the issues in the cause, and was properly refused.

The thirteenth specification was the refusal of the court to give the instruction No. 4 requested by appellant, and giving the same in a modified form, as follows: "In order for the defendant to recover in this case, it must have completed its road to Grove on or before December 31, 1900. The fact that rails and a train run over them is not conclusive that the road is entitled to recover, but the company, in order to recover, must show that the road on December 31, 1900, complied with the conditions of the defendant's subscription." The instruction requested was that the court should tell the jury that it was necessary, in order to find that the road had been completed, to find a state of facts not mentioned in the contract. The court very properly refused the request, and instructed the jury that they must find that the road on December 31, 1900, "complied with the conditions of the defendant's subscription." Substantial compliance with the terms of the contract was sufficient to entitle appellee to collect the subscription.

The fourteenth specification was the refusal of the court to give instruction No. 5 requested by appellant, and giving the same in a modified form, as follows: "If you believe from the evidence that after the writing sued on was signed by the defendant the plaintiff demanded that a new and additional writing be signed by the defendant, and that with the demand to sign an additional writing the plaintiff stated that, if the demand of the plaintiff was not complied with, the plaintiff would not build the road, the defendant had a right to treat the negotiations at an

end, and to withdraw the offer contained in the writing sued
on, and, if defendant did on such demand, coupled with such
statement, treat the negotiations as ended, and withdraw his prom-
ise in such a way as to notify plaintiff, and never
afterwards renewed negotiations, the plaintiff cannot recover;
provided such demand by plaintiff and such withdrawal
of promise by defendant were made before plaintiff had
acted thereon by arranging for and commencing the
construction of its road." Had the appellant inserted in his
instruction after the words "treat the negotiations as ended"
the words "and withdrew his promise in such a was as to notify
plaintiff," the same as stated by the court in the modified instruc-
tion given, the instruction requested would have been unobjec-
tionable. The proviso added by the court in the modified in-
struction was unnecessary, and, as stated, was unquestionably
erroneous; but from a consideration of the whole case we do not
regard this error as sufficient to cause a reversal, for the reason
that it does not affect materially the substantial rights of the
appellant.

The fifteenth and sixteenth specifications were the refusal
of the court to give certain instructions requested by appellant.
The first goes to the question as to whether a contract had been
made, and the instructions which had already been given by the
court, in our opinion, had fully covered that question. The
second does not cover any question contained in the contract, or
issue made in the pleadings, and both were properly refused.

The seventeenth specification was the alleged error of the
court in giving certain instructions, which have already been
considered under previous specifications.

The eighteenth specification was the refusal of the court
to grant a new trial. We think the judgment of the court in

refusing a new trial was correct, and therefore the judgment should be, and is hereby, affirmed.

RAYMOND, C. J., and CLAYTON, J., concur.