RAILWAY COMPANY *v.* B'SHEARS.

Opinion delivered June 9, 1894.

*Railroads—Stoppage of trains—Mandamus.*

Mandamus will not be issued, at the suit of a citizen of a town, to compel a railway company to stop its trains at such town, under Mansf. Dig. secs. 5500-2, until the authorities of the town shall have provided and tendered to the company sufficient means to defray the reasonable expenses of grading a switch or side-track at the town for the use of the company, though the company has already constructed all the switches and side-tracks necessary for the stopping of trains.

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

This is an appeal from a judgment of the circuit court of Hempstead county, granting a mandamus to compel the appellant to stop its fast train, known as the "Cannon Ball," at the incorporated town of Fulton upon the line of the road in said county.

The petition states that petitioner was the mayor of Fulton, an incorporated town in Hempstead county, Arkansas; that defendant was an incorporated railway, and a common carrier of passengers and freight; that defendant's railway extended from Texarkana through Fulton to Little Rock, Arkansas; that certain trains were operated on said railway, passing north and south through Fulton, known as the "Cannon Ball" trains; that respondent had all the switches and side tracks in said town of Fulton necessary for its use and convenience in stopping of its trains, freight and passenger, and a commodious depot building for the use and comfort of its passengers; that respondent caused said "Cannon Ball" trains to run rapidly through said town of Fulton without stopping, to the great annoyance and

inconvenience of plaintiff and the other citizens of said town ; that plaintiff and more than fifty citizens of said town of Fulton had applied in writing to Jay Gould, president, and to W. T. Kelly, superintendent, of defendant's corporation, and asked that said "Cannon Ball" trains be stopped at said town of Fulton, as provided for under the statute ; that said application had been refused.

This petition was demurred to upon the following grounds :

1.   Because it failed to set up facts sufficient to constitute a good cause of action against this defendant.

2.   Because it failed to set up facts sufficient, under the statutes of the State of Arkansas, to entitle him to a writ of mandamus as prayed.

3.   Because the plaintiff had no legal capacity to institute this suit.

4.   Because there was no equity in the petition entitling plaintiff to the relief sought.

After argument, this demurrer was overruled, and all proper exceptions duly saved.

The appellant answered, and, among other things, stated that two of its passenger trains and one local freight train carrying passengers going south, and the same number and kind of trains going north, stopped at the town of Fulton each day—one passenger at 7:22 a. m., going south ; one passenger at 7:55 p. m., going south ; one passenger at 7:55 p. m., going north ; one passenger at 8:32 p. m., going north.   That the "Cannon Ball" going south passes Fulton at 12:45 p. m., and does not stop.   That the Texas special passes Fulton at 3:01 p. m., and does not stop.   That these trains run to and from St. Louis and Memphis.   That the "Cannon Ball" was a fast train carrying United States mail and passengers, and was under the necessity of making fast time to make proper connection with trains at Texarkana and

St. Louis, and that the granting of the petition would interfere with the rapid transportation of interstate passengers, and the rapid transfer and delivery of the United States mails ; that said train stopped at all places where another road crossed or connects with appellant's road, etc.

After the evidence was concluded, the court declared the law to be as follows :

1.  That if, at the time of the application of the plaintiff to defendant to stop the train mentioned in complaint at Fulton, Ark., the defendant had all the necessary switches and side tracks at the town for the use and convenience in the stopping of the trains of the defendant, then it was not necessary to tender the reasonable expenses of grading a switch or side track at said town, required by sec. 5501 of Mansfield's Digest, before the plaintiff would be entitled to insist upon the stopping of the trains prayed for.

2.  That if the application required to be made under sec. 5500 of Mansfield's Digest was made in writing to W. T. Kelly, superintendent of defendant's road from Poplar Bluff to Texarkana, while the president of the company and the general superintendent were non-residents and absent from the State, such application is sufficient, and a sufficient compliance with said section.

3.  That, under sec. 5500 of Mansfield's Digest, if the evidence shows that Fulton was an incorporated town in this State, situated on the line of defendant's road, and that fifty of its citizens made application to defendant, as required under said section, asking it to stop its trains, which are mentioned in the complaint, at such town, then it became the duty of the company to comply with the requirement of the statute, and stop the train.

4.  That statute is not an interference with section 8, article 1, of the constitution of the United States,

which provides that Congress shall have power to regulate the commerce among the several States. The legislature of the State may, in the exercise of its police power, pass any law of a police character regulating the operation of railroad trains, which it considers necessary to protect the comfort, convenience and safety of its trains, notwithstanding such regulation may affect interstate trains. Upon the facts of this case, the court declares the law against the defendant, and mandamus is granted."

The defendant at the time objected separately to each of the declarations of law made by the court, and also excepted to the finding of the court upon the facts in the case, and also in rendering a judgment in favor of the plaintiff, and in granting said mandamus.

A motion for a new trial was then filed, overruled, exceptions saved, and an appeal prayed.

The following errors were assigned in the motion for a new trial:

1. Because the finding of the court was contrary to the law.

2. Because it was contrary to the evidence.

3. Because it was contrary to both the law and the evidence.

4. Because the court erred in refusing to declare the law as set out in prayers 1, 2, 3, 4 and 5, as asked by defendant.

5. Because the court erred in declaring the law to be as set out in prayers 1, 2, 3 and 4, as given by the court upon its own motion.

6. Because the court erred in declaring the law and facts in favor of plaintiff, and in granting the writ of mandamus.

7. Because the court has no jurisdiction to grant plaintiff's petition under the constitution and laws of the United States.

The petition for mandamus in this case was filed under secs. 5500–1–2, Mansfield's Digest, which read as follows:

"Sec. 5500.  When not less than fifty citizens of any incorporated town in the State, situated on the line of any railroad,  *   *   *  shall make application in writing to the president of said railroad company, etc.,  *   *   *  it shall be the duty of such railroad company to stop all of its trains, freight or passenger, at some point within the corporate limits of such town most convenient, etc.   *   *

"Sec. 5501.  Before any town may or can insist upon and compel the stoppage of trains as in this act provided, the corporate authorities of such town shall provide and make tender to such railroad companies sufficient means to defray the reasonable expenses of grading a switch or side track at such place of stopping for the use of such railroad company.

"Sec. 5502.  The writ of mandamus may issue at the suit of any citizen of such town, upon the failure of any such railroad company to stop its trains as in this act provided, and to compel such company to comply with the requirements of this act."

The petition failed to state that the corporate authorities of the town of Fulton had provided, and had made tender to the defendant railway company of, means sufficient to defray the reasonable expenses of grading a switch or side track at such place of stopping for the use of such defendant.

The circuit judge found as a fact "that, at the time of the application of the plaintiff to defendant to stop the trains mentioned in the complaint at Fulton, Ark., the defendant had all the necessary switches at the town for its use and convenience in the stopping of the train of defendant, and that, therefore, it was not necessary for plaintiff, or the town of Fulton, to tender to

the company sufficient means to defray the reasonable expense of grading a switch or side track at said town, as required by section 5501, before the plaintiff would be entitled to insist upon the stopping of the trains prayed for."

The issues upon the demurrer and upon the finding of facts by the court are the same, and may be considered together.

*Dodge & Johnson* for appellant.

The statute is plain and unambiguous. The plaintiff having failed to pay or tender the consideration required by the act, the failure is fatal. No exception is made in the statute, and the courts can make none. 1 H. L. App. Cases, 611, 620; Mansf. Dig. sec. 5501, etc.; Sutherland, Stat. Const. secs. 454, 458-9, 390, 399, 325-6, 427; 28 Ark. 360; 48 *id.* 155; Sedg. St. Const. sec. 343; 55 Ala. 408; 3 N. Y. 9; 73 Ala. 390; 67 Barb. 350; Endlich, Int. Stat. secs. 433-4, 17; 13 Ark. 292; 16 *id.* 694; 20 *id.* 18; 24 *id.* 494; 39 *id.* 247; 42 *id.* 122; 46 *id.* 37; 53 *id.* 481; 30 A. & E. R. Cas. 511; 43 *id.* 260; 142 U. S. 508; 136 U. S. 393; 110 *id.* 667-81-2.

*Scott & Jones* for appellee.

The law never requires a useless or vain thing. Having already all the tracks necessary, no tender was necessary. The reason has failed. Endlich, Int. St. sec. 295, p. 399. The intent and spirit of the act should govern, and not the literal meaning, when absurd consequences would otherwise follow. Sedg. Const. & St. Law, p. 255, note *a* (2d ed.); 35 Ark. 61; 37 *id.* 491; 48 Ark. 305.

HUGHES, J., (after stating the facts). The only question we have considered and determined in this case is, whether this suit can be maintained, the citizens of Fulton having failed to provide and tender to the railway company means sufficient to defray the reasonable expenses of grading a switch or side track at said town

of Fulton for the use of said company, in accordance with the requirement of section 5501 of Mansfield's Digest. There does not appear to be any ambiguity or obscurity in this section of the statute. Where a statute is unambiguous, as a general rule, but little room is left for construction.

In the case of *Sturges* v. *Crowninshield*, 4 Wheaton, 202, it is said: "Although the spirit of the instrument, especially of a constitution, is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of the instrument expressly provide shall be exempt from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of the words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the obscurity and injustice of applying the provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application." Quoted in Sutherland on Statutory Construction, pp. 315, 316, sec. 238.

Mr. Sutherland says: "One who contends that a section of an act must not be read literally must be able to show one of two things: either that there is some other section which cuts down or expands its meaning, or else that the section itself is repugnant to the general purview. The question for the courts is, what did the legislature really intend to direct; and this intention must be sought in the whole of the act, taken together,

and other acts in *pari materia*. If the language be plain, unambiguous and uncontrollable by other parts of the act, or other acts or laws upon the same subject, the court cannot give it a different meaning to subserve public policy or to maintain its constitutionality. The limited meaning of the words will be disregarded when it is obvious from the act itself that the use of the word was a clerical error, and that the legislature intended it in a different sense from its common meaning. Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity, of the result, is out of place. It is not the province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense." Sutherland on Statutory Construction, sec. 238.

Where the statute makes no exceptions, the courts can make none. It might be very just and reasonable and right that the statute should make an exception, such as is contended it does make, or ought to be construed to make, but this was within the power of the legislature, "and its exercise of the power cannot be restrained or varied by the courts to subserve" convenience, to relieve from hardships or from requirements that seem unreasonable, or even absurd, where the language is plain and unambiguous. *Sims* v. *Cumby*, 53 Ark. 421 ; *McGaughey* v. *Brown*, 46 Ark. 37 ; *Springfield, etc. Ry. Co.* v. *Lambert*, 42 Ark. 122 ; *Memphis, etc. Railroad Co.* v. *Carllee*, 39 Ark. 246.

The circuit court erred in awarding the mandamus, for the reason that no tender of amount necessary to pay expenses of grading switch had been made before suit, as required by the statute.

Reversed and dismissed.

BATTLE J., dissenting. I do not concur with the court in the interpretation of the statute in question.

It requires railroad companies, on the application of fifty citizens of any incorporated town to the proper officer, "to stop all trains—freight or passenger—at some point within the corporate limits of such town most convenient for the reception and handling and discharge of freight, and the reception and discharge of passengers, and the reception and delivery of the mails, and most convenient to accommodate the business of such town;" and then adds: "*Provided*, That before any town may or can insist upon and compel the stoppage of trains, as in this act provided, the corporate authorities of such town shall provide and make tender to such railroad companies sufficient means to defray the *reasonable expenses of grading* a switch or side track at such place of stopping for the use of such railroad company." Acts of 1873, pp. 169, 170. The object of this proviso was, I think, to relieve the railroad companies of any additional expense of grading a switch or side track to the convenient place in the town where they are required to stop their trains. Before a town can compel the stoppage of trains it must tender sufficient means to defray the reasonable expenses of *grading*, not laying, a switch or side track. If there is no grading to be done, no expense on that account can be incurred, and none, certainly, can be tendered or is required. The expense of laying or making the track which constitutes the switch, except grading, is imposed on the railroad companies.

In this case it is alleged, and not denied, that the railroad company has already constructed and in operation all the switches and side tracks necessary for the stopping of trains. No grading is necessary for that purpose. It would be folly to require a tender of means to defray an expense which does not and will not exist, in the event the petition of appellee be granted.

Wood, J., concurs with me.