Mr. Justice Battle dissents.

---

St. Louis & North Arkansas Railroad Company *v.* Crandell.

Opinion delivered April 15, 1905.

1. Deed—parol evidence to prove consideration.—Under the general rule that the consideration named in a deed is only *prima facie* evi-

dence of the real consideration, and that parol evidence is admissible, not to defeat the deed, but to prove the real consideration therefor, parol evidence is admissible to show that the consideration of a deed for right of way was the erection of a depot on the ground. (Page 93.)

2.  Same—proof of parol contract.—The rule forbidding the alteration, addition or variation of a written contract by parol evidence does not forbid parol proof that a deed was not the entire contract, but was a part of the execution of a contract which rested in parol. (Page 94.)

3.  Contract to maintain depot—breach.—A contract of a railroad company to keep and maintain a station on plaintiff's land is broken where it fails to maintain a passenger depot on plaintiff's ground, though it maintains a freight depot there. (Page 94.)

4.  Same—defense.—To an action against a railroad company on its contract to keep and maintain a station on plaintiff's ground it is no defense that such ground was without the town limits, and that defendant could under the statute be required to move its station within such limits, if the station was so removed by defendant voluntarily, and not in obedience to such statute. (Page 95.)

Appeal from Boone Circuit Court.

John N. Tillman, Judge.

Affirmed.

### STATEMENT BY THE COURT.

The appellant railroad company was contemplating building from Eureka Springs east into Boone County, and the citizens of Harrison were seeking to induce it to build to that town. The railroad company required, as a condition for so doing, a certain cash bonus, the donation of right of way from the Boone County line, and stational grounds at Harrison. ·

The officials of the railroad visited Harrison, and while they were there a public meeting was held to further the enterprise. The object was to secure subscriptions and donations to comply with the requirements of the railroad company. Crandell owned a tract of land near the town. He was absent the day of the meeting, and was sent for, and received in the meeting with cheers, to "encourage him to make his usual donation." The meeting had been discussing various station grounds, and among others a tract owned by Mrs. Josephine Murray adjoining Crandell's land.

Judge E. G. Mitchell was representing her in the matter, and stated that if the depot was located on a twenty-acre tract of hers she would donate ten acres and sell the other ten for $1,000. Taking the evidence favorable to Crandell (although there was no serious conflicts in any of it), as the finding must be tested by the sufficiency of his evidence, the following was the course of events:

Crandell stated that he did not want the depot on his land, but wanted it by him on the Murray land; and if the Murray tract was selected, he would give $1,000 and the right of way through his own land. A committee was appointed to confer with the railroad officials, and Crandell conferred with them himself, and was given to understand that his proposition would be accepted, but for him to see Watkins, the president of the road. He then went to Mr. O. W. Watkins, the president of the road. Mr. Watkins was a leading lawyer of his part of the State, was raised in Boone County, and known well and favorably to all the parties connected with the transaction. Mr. Watkins told him (so Crandell testifies) that his proposition was accepted. Crandell, Murray, Judge Mitchell and Mr. Watkins went to a law office to draw a contract. In the meantime Judge Mitchell had succeeded in getting Mr. Crandell to raise the amount to be paid Mrs. Murray to $1,100. Mr. Watkins dictated and Judge Mitchell wrote the contract which was signed by Mrs. Murray and Crandell. This contract was lost, and its contents shown by parol with the usual varying versions. Crandell made deed to the railroad company for the right of way through his land, reciting a consideration of one dollar. Mrs. Murray executed a deed for the 20 acres, reciting a consideration of $1,100, and it contained this clause: "This land is granted to said railroad company for railroad purposes, and is to be used by said railroad company for the purpose of keeping and maintaining a railroad station on the same, and to be used by it for other purposes connected with said railroad and the operation thereof, and for no other purposes."

Crandell paid Mrs. Murray the $1,100, and when the railroad fulfilled its part of the contract with the people of Harrison, and was built there within the time stipulated, the deeds were delivered to Mr. Watkins. After the agreement referred to eighty-nine of the citizens entered into contract with the railroad company

guarantying the fulfillment of its various requirements, including the furnishing of this right of way and stational facilities procured of Mrs. Murray and Crandell. The deeds of Mrs. Murray and Crandell were executed after the written agreement with the citizens, but the agreement dictated by Mr. Watkins, which was evidently only between Mrs. Murray and Crandell, so far as it was written, was made before the citizens' written agreement. Crandell erected various improvements upon his property suitable to its then location close to the station. The railroad maintained the station it erected on the Murray land as freight and passenger station for the town of Harrison for a year, and then erected a passenger station 500 yards distant, and abandoned the Murray depot as a passenger depot, and maintained it solely as a freight depot. No tickets were thereafter sold at the Murray depot, and no passenger trains stopped there. The Murray depot was not within the corporate limits. More than fifty citizens of Harrison signed the petition, in conformity to section 6709, Kirby's Digest, to require the railroad to establish a stopping place convenient for the reception and handling of freight, receiving and discharging passengers, etc. This was delivered to the president of the railroad. The town authorities did not take action contemplated by section 6710, but interested citizens raised the money necessary to defray the expenses of the railroad in establishing the new station. The new station is solely a passenger station, and freight is not received, handled or discharged there.

Crandell sued the railroad for damages by reason of removing the passenger station, and among the elements of damages claimed was the $1,100 paid Mrs. Murray, the value of the right of way through his land, the loss in value of property built by him near the depot, and other matters not necessary to mention, as the appellant admits the evidence sustains the amount found, and is only contesting the liability. The case was tried before the court sitting as a jury, and damages assessed at $2,500, and the railroad company appealed.

*G. J. Crump* and *J. V. Walker*, for appellant.

*J. W. Story* and *B. B. Hudgins,* for appellee.

The appellant entered into an agreement to locate and maintain a depot on the Murray land, and the agreement need not have been in writing.  55 Ark. 115; 48 N. J. Eq. 539; 18 S. W. 1030; 74 Pa. St. 208; 65 Ark. 371; 58 Ark. 381.

Hill, C. J., (after stating the facts.)  1.  The appellant contends that appellee had no contract with it other than what appears in his right of way deed.  The evidence adduced by appellee amply sustains the finding that there was a contract between appellee and the railroad company.  The propositions made in the citizens' meeting were submitted to the railroad company, and accepted by it, and then the parties, under the direction of the railroad company's president, proceeded to make a contract between themselves, so as to effectuate the propositions made and accepted. Every move of Mrs. Murray and Crandell was conditioned on the acceptance by the railroad company of that site as the station grounds.   There is some difference as to the extent Mr. Watkins dictated the contract, which is wholly immaterial; it was drawn only after he notified both parties that the railroad company would accept the proposition, and this contract was between Crandell and Mrs. Murray, binding each other reciprocally to the terms agreed upon, so that it could be made effective between them when the time came to deliver the deeds to the railroad company.   Later the railroad company took a written guaranty from citizens to the effect that the various matters it required would be furnished free of expense to the company.   This did not in any way alter the status of the depot proposition; it merely guarantied, *inter alia,* that it would be given as stipulated.   If Mrs. Murray had conveyed to Crandell in consideration of the money paid her by him, and then he conveyed the land to the railroad company with a right of way over his other land, then the transaction would have been plainer, but not different in legal effect from the actual one.  The real consideration of Crandell's conveyance of his right of way and securing the Murray land was the establishment of a depot on the Murray land, so that his property would be enhanced in value thereby.   The agreement of the railroad company that it would put the depot there, with full knowledge of Crandell furnishing the money for the purchase of the Murray land, the acceptance of Crandell's right of way deed with a nominal consideration, when the real one was known, constituted

a contract between Crandell and the railroad company that it would locate the depot on the Murray land. So far as Crandell and the railroad company was concerned, the contract rested in parol, and was carried out by three different writings, one the contract dictated by the president of the railroad company between Mrs. Murray and Crandell, and the two deeds from Mrs. Murray, respectively, to the railroad company consummating the agreement. It is insisted that Crandell's deed alone evidences the consideration for it, but this court has often held that the consideration named in a deed is only *prima facie* evidence of the real consideration, and parol evidence is admissible, not to defeat the deed, but to prove the real consideration therefor, with limitations not necessary to develop here. *Jordan* v. *Foster,* 11 Ark. 139; *Pate* v. *Johnson,* 15 Ark. 275; *Vaugine* v. *Taylor,* 18 Ark. 65; *Barnett* v. *Hughey,* 54 Ark. 195; *Kelly* v. *Carter,* 55 Ark. 112; *Busch* v. *Hart,* 62 Ark. 330; *Davis* v. *Jernigan,* 71 Ark. 494.

It is permitted the landowner, applying this rule to these facts, to show by parol that the consideration for a right of way deed was the erection of a depot on the ground. 1 Rorer on Railroads, p. 483; *Watterson* v. *Railway,* 74 Pa. St. 208. The application of these principles to the case at bar sustains a contract between appellee and appellant as having been validly made and properly proved.

2. Objection is made to the testimony of the occurrences at the citizens' meeting. This was upon the theory that Crandell's deed was all the evidence admissible, and, it being in writing, these were prior occurrences merged into it, and therefore inadmissible. As indicated in discussing the other question, the deeds were not the entire contract by any means; they were but parts of the execution of the contract between the railroad company and Crandell, which rested in parol. Evidence of a parol contract carried out by executing a deed in furtherance of it does not offend against the rule forbidding alteration, addition or variation of written contract by parol. *Kelly* v. *Carter,* 55 Ark. 112.

3. Appellant contends that the establishment of the passenger depot within the corporate limits was required by law, and rendered unnecessary the further maintenance of the depot 500 yards distant on the Murray place. If that be conceded, it does not help appellant. When it contracted to locate the depot on the

Murray land, it knew it could be compelled to comply with the statute and maintain a depot in the corporate limits also, and it should have contracted against this possibility if it desired to avail itself of a right to abandon this one. The evidence fails to show a forced location of the depot in compliance with a statutory requirement and in fulfillment thereof. The town authorities never acted, and the railroad could not have been forced to comply with the statute till they did. *Railway Company* v. *B'Shers,* 59 Ark. 237. But it is insisted that the railroad could waive that, and when it accepted the money from the citizens it became in legal effect as if the statute had been fully complied with. The evidence shows that the new station is only a passenger depot, whereas the statutory requirement is "to stop all trains, freight or passenger, at some point within the corporate limits of such town most convenient for the reception and handling and discharge of freight, and the reception and discharge of passengers." Kirby's Dig. § 6709.

It is plain that the new depot is not erected in obedience to and fulfillment of the statute, but is a voluntary act, and there has been a voluntary abandonment of the Murray depot as a passenger station.

4. The question discussed in *Railway Company* v. *Birnie,* 59 Ark. 66, as to the length of time a depot must remain in order to be a performance of the condition of the donation, was not raised in this case.

The judgment is affirmed.