FARRINGTON vs STUCKEY ET AL.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 647.)

1. *Contract—Bonus.*

A contract made by a railroad company to construct its railroad through a town in consideration of a bonus is not void as against public policy and does not render the note given for the bonus void.

2. *Same.*

The bonus was not shown to be for the benefit of any other than the railroad company so as to make the contract void, because notes executed to trustees, payable to a town were assigned to A., trustee, an officer, director and stockholder of said railroad company. The assignment conditioned that the notes would be void if the road was not constructed.

3. *Parol Evidence.*

Plaintiff executed notes to trustees, payment being conditioned on the construction of a railroad to D. The trustees made a written assignment thereof to A., trustee, stating that the consideration was the benefit to be derived by the town from the construction of a road to such town. Therefore it cannot be proved that part of the consideration was an invalid agreement that no depot should

be between D. and another town, by oral testimony, that the person representing A. when the assignment contract was executed, declared to the persons making the assignment that he would have A. make such an agreement on the following day.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, April 16, 1906.

Suit by Alonzo J. Farrington against W. L. Stuckey, trustee, and others. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

On February 26, 1906, the plaintiff, appellant here, filed his complaint in equity against W. L. Stuckey, trustee, Wm. Kenefick, Trustee and Wm. Kenefick Company, defendants below appellees here, and alleged that on the 18th day of November, 1904, to secure the payment of two notes of $250 each, and dated the 18th day of November, 1904, one of which was payable on or before the 1st day of June, 1905, or 30 days after trains were running on regular schedule into the town of Henryetta on the railroad then being constructed by the Wm. Kenefick Company in a southwesterly direction from Muskogee, Ind. Ter., and the second payable on or before September 1, 1905, or 30 days after connection is made with some railroads south of Henryetta, Ind. Ter., by the extension of the railroad now being built by the Wm. Kenefick Company in a southwesterly direction from Muskogee, Ind. Ter., through Henryetta, Ind. Ter., made payable to W. D. Hudson, John W. Sullins, and Anthony Crafton, trustees, plaintiff executed to said trustees a deed of trust on lots 11 and 12, in block No. 5, in Key addition to the town of Henryetta, and on lot 13 in block 29 in the original townsite of Henryetta. And alleged: That plaintiff has this day subscribed the sum of $500 for the purpose of securing the building of the railroad now being constructed by the Wm. Kenefick Company in a southwesterly direction from Muskogee, Ind. Ter., in and through the town of Henryetta, and has

executed his two promissory notes of even date herewith for the sum of $250 each, with interest at the rate of 8 per cent. per annum after maturity, payable to W. B. Hudson, John W. Sullins, and Anthony Crafton, trustees, or their order; one of said notes payable June 1, 1905, as above alleged, and the other on September 1, 1905, as heretofore alleged. That said trust deed is made to secure the payment of said promissory notes, and if default be made in the payment of said notes, or either of them, at the time they become due, then said trustees, or their successors or assigns, are authorized to sell said premises at public auction to the highest bidder for cash, after advertising same for 20 days by posting notices, giving the time, place and terms of sale in five public places in the town of Henryetta, after deducting the costs and expenses of sale, and apply the proceeds, or so much thereof as may be necessary, to the satisfaction of said notes, and the remainder, if any, to the party of the first part.

Plaintiff alleges that, prior to the execution of the said trust deed, he was the owner in fee simple of said lots above described, and but for said deed of trust is today owner in fee simple of said lots. Plaintiff further alleges that the $1 consideration expressed in said deed of trust was never paid to plaintiff, and no consideration ever moved from said trustees to plaintiff for the making of said notes and deed of trust; that said notes and deed of trust were made and executed at the instance of the defendant Wm. Kenefick, upon his representations that the railroad, now known as the Missouri, Oklahoma & Gulf Railroad, then being built in a southwesterly direction from Muskogee, by the Wm. Kenefick Company, would take its course and be constructed on a direct line from Muskogee down a certain creek known as Wolf creek, the nearest point to which from Henryetta is above five miles distant. And said defendant, Wm. Kenefick, further states that unless plaintiff, together with other citizens of Henryetta, should raise him (Wm.

Kenefick) a bonus of $20,000, the said Missouri, Oklahoma & Gulf Railroad would not be constructed through Henryetta, and plaintiff believed said threat to be true, and did execute said notes and deed of trust in manner and form as dictated by the defendant Wm. Kenefick; that plaintiff, with a large number of other citizens of Henryetta, executed. notes and deeds of trust to said trustees, Hudson, Sullins, and Crafton, in the aggregate sum of $20,000. That immediately upon the execution of said notes the said trustees did indorse each and every one of said notes to Wm. Kenefick, and then and there made what purports to be an assignment of said deeds of trust to Wm. Kenefick, in the following language: "The notes secured by this trust deed, together with security, are assigned to Wm. Kenefick this the 21st day of November, 1904. Signed: W. B. Hudson, John W. Sullins, Anthony Crafton, Trustees"— the said indorsement being made on the 21st day of November, 1904, and on the same day the following contract was signed and entered into by and between the trustees aforesaid, Hudson, Sullins, and Crafton, parties of the first part, and the defendant Wm. Kenefick Company, party of the second part. Said contract contains, among other things, the following: "That, whereas, for and in consideration of the benefit to be derived from the construction of the railroad now being constructed by the Wm. Kenefick Company in a southwesterly direction from Muskogee, Ind. Ter., and through the town of Henryetta, and, whereas, various parties interested have executed their promissory notes secured by trust deeds payable to the orders of the parties of the first part, and to be by them used for the purpose of securing the building of said railroad into and through the town of Henryetta, to the north fork south of Henryetta: Therefore, in consideration of the delivery and assignment of the securities above referred to amounting to twenty thousand dollars, to Wm. Kenefick, trustee, it is understood and agreed," etc.

Plaintiff alleges that no consideration was ever paid by Wm. Kenefick or the Wm. Kenefick Company, or by any other person, acting for them, or as their agents, for the assignment of said notes and mortgage to Wm. Kenefick, and that said contract and assignment of said notes and mortgage are wholly without consideration. Plaintiff alleges that it was agreed by and between the parties to the foregoing contract that it should contain a provision to the effect that no depot or townsite should ever be constructed or laid out between Henryetta, Ind. Ter., and Dustin, Ind. Ter., and no stops or stations should be recognized by the said railroad company; and that defendant W. L. Stuckey assured said parties of the first part, together with plaintiff, that the defendant Wm. Kenefick would send a written statement and agreement on the following day, to wit, the 22d day of November, 1904, agreeing that no such stations, depots, or townsites should be recognized, constructed or platted. And plaintiff states that said defendant wholly neglected, declined, and refused to sign and deliver to said plaintiff, or to said trustee, the said written statement and agreement, in accordance with said assurance. Plaintiff states that the said agreement not to erect and construct depot and station at any point between said town of Henryetta and Dustin is void the same being against public policy, and ought not to be enforced, and that said promise was the only consideration given by defendants and trustees to plaintiff for the execution and assignment of said notes and deeds of trust. '

Plaintiff further alleges that at the time of making the said agreement the defendants Wm. Kenefick and the Wm. Kenefick Company were engaged in locating and constructing the Missouri, Oklahoma & Gulf Railroad for the Missouri, Oklahoma & Gulf Railroad Company; that Wm. Kenefick, trustee, who negotiated said agreement, and to whom the said notes and deed of trust were assigned, was at the time of the execution of said notes and deed of trust, and at the time

of their assignment by said trustees to the said Wm. Kenefick, a stockholder and director and the president of the Wm. Kenefick Company, and was also a stockholder and director and the president of the Missouri, Oklahoma & Gulf Railroad Company; that the said railroad company was at that time, and is now, a separate and distinct company, and in no wise connected with the Wm. Kenefick Company, except that some of the stockholders in said Wm. Kenefick Company were also stockholders in the railroad company, and defendants were locating and constructing said railroad for said company; that in causing said road to be built by way of Henryetta it was necessary to deflect the same from its most natural and cheapest route a great number of miles, namely, four miles, at a great additional cost to the railroad company, viz., about $50,000. And plaintiff says that the said agreement, on defendant Wm. Kenefick's part, to influence the location of said railroad, for which location the said notes and mortgages were presumed to have been assigned to Wm. Kenefick by said trustees, was and is contrary to public policy and void.

Plaintiff further states that Wm. Kenefick, who negotiated said contract with plaintiff, through said trustees, was at the time a stockholder, officer, and director of the said railroad company; that he went to Henryetta, where the plaintiff resides, and represented to plaintiff that he could control and induce the location and construction of the said railroad by way of Henryetta, and would do so if the plaintiff and other citizens of the town of Henryetta would donate the sum of $20,000 and a right of way 14 miles; that said Wm. Kenefick then and there informed the plaintiff that unless the plaintiff and other citizens acceded to his demands to pay the said sum of money to him (Wm. Kenefick) the said railroad would not be constructed by way of Henryetta, but would be constructed along the line of a preliminary survey five miles east of Henryetta; that to prevent the location and building of said road along the

said preliminary survey, to the exclusion of the said town of Henryetta, plaintiff was forced and agreed to pay to Wm. Kenefick, trustee, $500, and did execute his said note and deed of trust in manner and form as aforesaid; that said defendants, by virtue of the said assignments of said notes and deed of trust, made by said trustees to Wm. Kenefick, and by virtue of the further assignment of the same by Wm. Kenefick to W. L. Stuckey, and by virtue of the power of sale contained in said deed of trust, the said W. L. Stuckey has had for sale, and is threatening to sell, the lots belonging to plaintiff; that he has posted notices in and about Henryetta, and has inserted notices in the Henryetta Free Lance, a newspaper having a bona fide circulation in the Western district of Indian Territory, to the effect that he, the said W. L. Stuckey, will offer for sale on the 28th day of February, 1906, the said property, to the highest bidder cash in hand. Plaintiff says that, unless defendants be restrained from selling said property, he will suffer great and irreparable injury; that a cloud will be placed upon his title to said lots. Plaintiff states that he has no adequate remedy at law, and prays that a temporary injunction be issued to restrain said sale, and enjoin and restrain said defendants from proceeding under the power of sale contained in said deed of trust, and that upon a final hearing said notes and deed of trust be declared void and illegal, and that the same be canceled and held for naught, and that said injunction be made perpetual upon a final hearing.

On the same day, the 26th day of February, 1906, the judge in chambers grants a temporary injunction herein, restraining and enjoining the within named defendants, their agents, attorneys, solicitors, employes, and representatives, from selling or offering to sell or further proceeding under the power of sale in the within named deed of trust, until the further order of this court. On the 16th day of April, 1906, defendants filed demurrer to the complaint of the plaintiff, as follows:

"Comes now the defendants, W. L. Stuckey, trustee, Wm. Kenefick, trustee, and the Wm. Kenefick Company, defendants in the above-entitled cause, and demur to the plaintiff's complaint, and say: (1) Said complaint does not state facts sufficient to warrant the relief prayed. (2) The first paragraph of said complaint does not state facts sufficient to constitute a cause of action. (3) The second paragraph does not state facts sufficient to constitute a cause of action, or entitle plaintiff to the relief prayed in said complaint. Defendants pray that said bill be dismissed for want of equity, and said temporary restraining order be dissolved." On the same day, the 16th day of April, 1906, defendant's demurrer to plaintiff's complaint is heard and sustained by the court, and the complaint dismissed for want of equity at the cost of the plaintiff, to which the plaintiff at the time excepted, and prayed an appeal to this court. On the 4th day of May, 1906, plaintiff files petition for appeal, which on the same day was allowed, and on same day plaintiff files 14 assignments of error. On same day he filed appeal and supersedeas bond, and the case was brought to this court by appeal.

*W. M. Matthews*, for appellant.

*W. L. Stuckey* and *Preston C. West*, for appellees.

TOWNSEND, J. (after stating the facts as above). The appellant has filed 14 assignments of error, as follows: "(1) That the court erred in sustaining the defendants' demurrer to plaintiff's complaint. (2) That the court erred in holding that the plaintiff's complaint failed to state facts sufficient to constitute a cause of action. (3) The court erred in holding that the contract on the part of the defendants with the said trustees, W. B. Hudson, John W. Sullins, and Anthony Crafton, to influence the construction of the Missouri, Oklahoma & Gulf Railroad into and through the town of Henryetta, is not contrary to public policy and void, and that the notes given in consideration of said contract with their security, the deed

of trust, are not void as against public policy, and without
,consideration.    (4)   The court erred in not holding that the
said notes executed by the said plaintiff to said trustees and
assigned by them to the defendant, William Kenefick, trustee,
and by William Kenefick, trustee, to W. L. Stuckey, trustee,
were given in consideration of a contract which is void as against
public policy, and that the said notes given in consideration
of said contract are also void.    (5)   The court erred in holding
that the agreement of the defendants not to construct, plat, or
recognize any townsite or station between the towns of Henryetta
Ind. Ter., and Dustin, Ind. Ter., was not contrary to public
policy and void,. and that the said notes given by plaintiff in
consideration of the said void agreement was not contrary
to public policy and void and without consideration.    (6)   The
court erred in holding that the agreement between the said
trustees, W. B. Hudson, John W. Sullins, and Anthony Crafton,
and the defendants, to the effect that they, the defendants,
would put in writing on the following day the agreement of
defendants not to construct, plat, or recognize any townsite or
station between the towns of Henryetta, Ind. Ter., and Dustin,
Ind. Ter., could not be proven by parol testimony.    (7)   The
court erred in not holding that the said contract not to construct
or recognize or plat any townsite or station between the towns
of Henryetta, Ind. Ter., and Dustin, Ind. Ter., as set out in
plaintiff's complaint, was well pleaded.    (8)   The court erred
in construing said agreement of the defendants to put in writing
said contract of the said defendants not to construct, plat, or
recognize any townsite or station between the towns of Henryetta
Ind. Ter., and Dustin, Ind. Ter., that equity would consider as
done that which ought to have been done.    (9)   The court
erred in holding that the said contract of the defendants not
to construct, recognize, or plat any townsite or station between
the towns of Henryetta, Ind. Ter., and Dustin, Ind. Ter., was
not contrary to public policy and void, and that the said contract

did not vitiate the whole of the said agreement between plaintiffs and their trustees and the defendants. (10) The court erred in dismissing the temporary restraining order for want of equity in plaintiff's complaint. (11) The court erred in dismissing plaintiff's complaint for want of equity in plaintiff's complaint. (12) The court erred in not holding that in this contract, void as against public policy, equity should grant plaintiff relief, although plaintiff and defendants were in pari delicto in the making and entering into said contract. (13) The court erred in refusing to grant plaintiff affirmative relief by granting injunction to restrain defendants from selling plaintiff's property. (14) The court erred in refusing to cancel said notes and deeds of trust given by plaintiff to trustees, W. B. Hudson, John W. Sullins, and Anthony Crafton, and assigned to William Kenefick, trustee, and assigned by William Kenefick, trustee, to W. L. Stuckey, trustee. Wherefore, for divers other errors apparent in said record, appellant prays that the said holdings, order and decree and the aforesaid proceedings be reversed.''

Said assignments of error are discussed under five separate heads: ''(1) A railroad is a quasi public corporation, and any contract based upon a pecuniary consideration or the promise of a pecuniary consideration, either directly with the railroad to induce it to locate its road along a certain route, or with an agent, employe, director, or stock holder of the railroad, to influence the location of the road along a certain route, is contrary to public policy and void. (2) Where a contract has been entered into, void as against public policy, equity will give relief to a party to the contract asking for its cancellation, even though he stands in pari delicto. (3) An agreement not to locate a railroad station at a certain point is void as against public policy. (4) Where an agreement is entered into, and part of it is put in writing, and the parties agree to put the other part in writing on the following day, and one of the parties refuse to execute the second portion, equity will

consider as done that which ought to have been done. (5) If a contract contains more than one covenant, one of which is illegal, and the covenants are inseverable, the whole contract is void."

Plaintiff alleges that the defendant's demurrer to the complaint of plaintiff is general, alleging that the plaintiff does not state facts sufficient to constitute a cause of action, and that therefore it admits each and every allegation of the complaint which is well pleaded. This proposition is agreed to by appellee, and is undoubtedly correct.

The first contention of the appellant is that a railroad is a quasi public corporation, and that any contract based upon a pecuniary consideration or promise of a pecuniary consideration, either directly with the railroad to induce it to locate its road along a certain route, or with an agent, employe, director, or stockholder to influence the location of the road along a certain route, is contrary to public policy and void. Appellant then discusses, and cites authorities to show, that all such contracts made directly with the corporation itself are void as being against public policy; but the only contract alleged to have been made is not with the corporation direct, but that the same was made as follows: "The said notes and deed of trust were made and executed at the instance of the defendant William Kenefick, trustee, and upon his representations that the railroad, now known as the Missouri, Oklahoma & Gulf Railroad, then being built in a southwesterly direction from Muskogee, by the Wm. Kenefick Company, would take its course and be constructed on a direct line from Muskogee down a certain creek known as Wolf creek, the nearest point to which from Henryetta is about five miles distant; and said defendant, Wm. Kenefick, trustee, further stated that unless the plaintiff, together with other citizens of Henryetta, should raise him a bonus of $20,000, the said Missouri, Oklahoma & Gulf Railroad would not be constructed through Henryetta;

and plaintiff believed said threat to be true, and did execute said note and deed of trust in manner and form as dictated by the defendant William Kenefick, trustee." Then the complaint further alleges that a number of other citizens of Henryetta executed notes and deeds of trust to said trustees, Hudson, Sullins, and Crafton, in the aggregate sum of $20,000, and that immediately upon the execution of said notes the said trustees did indorse each and every one of said notes to William Kenefick, trustee, and then and there made what purports to be an assignment of said deed of trust, together with an assignment of said trusteeship, to William Kenefick, trustee. It is further alleged in said complaint that said William Kenefick, trustee, was a stockholder, director, and the president of the William Kenefick Company, and was also a stockholder director, and the president of the Missouri, Oklahoma & Gulf Railroad Company; that in causing said railroad to be built by way of Henryetta it was necessary to deflect same from its most natural and cheapest route a great number of miles, viz., four miles, at a great additional cost to the Missouri, Oklahoma & Gulf Railroad, viz., about $50,000.

Plaintiff says that the said agreement of defendant Wm. Kenefick, trustee, to influence the location of said railroad, for which the location of said notes and mortgages were presumed to have been assigned to William Kenefick, by said trustees, was and is contrary to public policy and void; that said William Kenefick, who negotiated said contracts with plaintiff, through said trustees, was at the time a stockholder, officer, and director in the said railroad company, and represented to plaintiff that he could control and induce the location and construction of said Missouri, Oklahoma & Gulf Railroad by way of Henryetta, and would do so if the plaintiff and other citizens of the town of Henryetta would donate the sum of $20,000 and a right of way for 14 miles; and that said William Kenefick then and there informed the plaintiff that, unless the plaintiff and other

citizens acceded to the demands to pay the said sum of money to him, William Kenefick, trustee, the said railroad would not be constructed by way of Henryetta, but would be constructed along the line of a preliminary survey five miles east of Henryetta, and to prevent the location and building of said road along said preliminary survey, to the exclusion of the said town of Henryetta plaintiff was forced to agree to pay William Kenefick, trustee, and did execute the deed of trust and notes in manner and form as aforesaid.

The appellee in his brief says, first, that there is nothing in this complaint that discloses a contract with an agent, employe, director, or stockholder of the railroad company, to influence a railroad to disregard the duty which it owes to the public, and contends that, by reason of the fact that the termini of said railroad were not fixed, therefore the diversion of said road was not in violation of any contract, and that the authorities cited by appellant do not sustain the allegations of the complaint. And appellee says, further, it nowhere appears that William Kenefick, or William Kenefick Company, W. L. Stuckey, or any one else, received this money for their personal benefit. And appellee cites the opinion of the court in the case of L., N. A. & C. R. R. vs Sumner, 106 Ind. 55, 5 N. E. 404, 55 Am. Rep. 719, in which the court says: "Agreements of the character under consideration, so far as they have become the subject of judicial interpretation, are of three classes. There are those of which stipulations are contained providing for the location of stations or depots at particular places, and prohibiting the location or erection of any others within certain prescribed limits. Concerning all such agreements as contain restrictive stipulations, by which the railroad company undertakes to prohibit itself from thereafter erecting other station houses or depots at other places, or within prescribed limits, they are uniformly, so far as we know, held to be void as against public policy. Railroad corporations are regarded as public agencies

owing duties to the public generally. They are therefore not authorized to make any contract which may prevent them from discharging their duties efficiently to the public, and for that reason they cannot contract that the company will not locate a station or erect a depot at a place where the demands of business or concentration of population may at some time in the future require it. Such a contract is void, as against public policy. Another class of cases are those in which some officer or other person, supposed to be influential with a railway company, undertakes, for a consideration moving to them, to secure the location of stations, depots, etc., at a particular place. A conspicuous case in this class is Fuller vs Dame, 18 Pick. (Mass.) 472. All such contracts are void, as against public policy. Still another class is that to which the case under consideration is allied. Such are the cases in which an agreement has been made between an individual and a railway corporation for the location of a station or depot at a particular place, in consideration of a donation of money or property to the corporation without any restriction or prohibition against any other location. No case had fallen under our notice in which this question was directly involved, and which was not controlled by other considerations which condemn such an agreement. On the contrary, it has been held that an agreement to pay a railway company a stipulated sum in consideration that it would locate its route at a particular place is valid, and may be enforced. Railroad vs Baab, 9 Watts (Pa.) 458, 36 Am. Dec. 132; First National Bank vs Hendrie, 49 Iowa, 402, 31 Am. Rep. 153. So a conditional subscription of stock is valid. Railroad Co. vs McCormick, 10 Ind. 499, 71 Am. Dec. 337; Jewett vs Railway Company, 10 Ind. 539. A voluntary grant to a railroad, on condition that it would locate its route and establish a depot at a certain place, was sustained, as not being in contravention of public policy. McClure vs Railroad Co., 9 Kan. 373." This opinion distinguishes and classifies the different cases arising upon this question.

The complaint does not allege any agreement for the location of stations or depots at particular places, and prohibiting the location or erection of any others within certain prescribed limits, except as shall be hereinafter discussed. The complaint does not allege that the bonus made by the appellant and other citizens of Henryetta was for the personal benefit of any of the defendants, and the appellee insists that the making of the notes and trust deeds, as alleged in the complaint, was simply an agreement to pay the railway company a stipulated sum in consideration that it would locate and construct its road through the town of Henryetta, and that such a contract is valid and may be enforced, and that the following provision of the contract fully sustains appellee's contention: "The above conveyance is made upon the following conditions: That, whereas, Alonzo J. Farrington has this day subscribed the sum of $500 for the purpose of securing the building of a railroad now being constructed by the Wm. Kenefick Company in a southwesterly direction from the town of Muskogee, Ind. Ter., into and through the town of Henryetta, has executed two promissory notes of even date herewith," etc. Exhibit D says: "That, whereas, for and in consideration of the benefits to be derived from the construction of a railroad now being constructed by the Wm. Kenefick Company in a southwesterly direction from the town of Muskogee, Ind. Ter., into and through the town of Henryetta, Ind. Ter., and, whereas, the various parties interested have executed their promissory notes secured by trust deeds and their promissory notes and procured certified checks, all payable to the order of the parties of the first part to be by them used for the purpose of securing the building of the said railroad into and through the town of Henryetta, Ind. Ter.," etc.

This court, in the case of Doherty vs Arkansas & C. R. Co., 82 S. W. 899, 5 Ind. Ter. 537, sustained the validity of the consideration of such a contract; but while the case was reversed in the Circuit Court of Appeals, it was not by reason

of the failure of consideration, but the court found that the contract for the subscription of stock had not been completed before the defendant withdrew his subscription, and reversed the same on that ground. There can be no question that contracts made with the officers of a railroad company, and for their own personal benefit, by which it is sought to influence them to procure the road to be built on a particular location, or to procure the location of a depot at a particular point, are absolutely void as against public policy, and it is said that such an agreement must either be in the nature of a bribe to procure the location of the road where it would not be of the greatest benefit to the stockholders, or it is a contract to pay the directors for doing what they were already bound to do, but were fraudulently claiming they would not do, and is therefore without consideration, and in either case it cannot be enforced. If a contract is made solely to promote private interests at the expense of the public welfare, the contract should be held to be illegal; but if public interests are not prejudiced, or the power of the company to do what the public welfare requires is not abridged, the contract should be regarded as valid. We are of the opinion that the rule is that any contract by which the rights of the public are infringed is void as against public policy; but what are public rights, and the public policy in which those rights are founded, depend so much upon the peculiar circumstances of each case that it is not an easy matter to state a general rule that will govern any given contract.

The plaintiff in this case has alleged that "in causing said railroad to be built by way of Henryetta, it was necessary to deflect the same from its most natural and cheapest route a great number of miles, viz., four miles, at a great additional expense to the Missouri, Oklahoma & Gulf Railroad Company, viz., about $50,000." The question naturally suggests itself, when the railroad was to be built in a southwesterly direction, with no southwestern terminus: How "it was necessary to

deflect the same from its most natural and cheapest route?"
The inference would be that William Kenefick, in order to
get the citizens of Henryetta to give a bonus of $20,000, used
the agrument that he might run the road down Wolf creek.
At all events, the representations made by Kenefick were
sufficient to induce the people of Henryetta to give a bonus of
$20,000 in order to get a road constructed through the town of
Henryetta.    The construction of the same through the town
of Henryetta could not be a deflection of the route, when the
only thing alleged was the building in a southwesterly direction,
with no terminus whatever fixed.    If the complaint had specifi-
cally alleged that this bonus was given to the stockholders or
officers, or agents of said company, for their own personal benefit,
such a contract would have been illegal and void as against
public policy.    And if this bonus was contributed to the William
Kenefick Company, who were constructing this road, or the
railroad company, in order to get a road constructed through
the town of Henryetta, and the same was an open transaction,
free from any corrupt purpose on the part of the stockholders,
officers, or agents of the said railroad company, and that in
pursuance of said bonus so provided said road was constructed
according to the terms of the contract, why should the same
not be upheld and be a valid and binding contract upon appellant
and other parties so contracting?

The appellant has cited the case of Fuller vs Dame, 18
Pick. (Mass.) 472, as sustaining his contention.    That case holds
that one Fuller, who was a stockholder in the Boston & Worcester
Railroad, agreed to secure the location of a depot at a certain
place, and for that purpose organized a corporation, and induced
the company to so locate it, and as a consideration for his services
took the note of the defendant Dame for $9,600, payable to him
personally, and the court very properly held that the contract
between Fuller and Dame was void, and that the note was void,
as against public policy.    In the case of Woodstock Iron Co. vs

Richmond, etc., Co., 129 U. S. 643, 9 Sup. Ct. 402, 32 L. Ed.
819, Justice Field, delivering the opinion of the court, said:
"As appears from the pleadings, which are set forth in the above
statement, some time previous to November, 1881, the plaintiff
below, the Richmond & Danville Extension Company, a cor-
poration created under the laws of New Jersey, entered into a
contract with the Georgia Pacific Railroad Company, a corpora-
tion created under the laws of Georgia, to locate and construct
for the latter company, by the nearest, cheapest, and most
suitable route, a railroad from Atlanta, in Georgia, through
Alabama, to Columbus, in Mississippi, at the rate of $20,000
a mile to be paid in whole or in part in the bonds of the railroad
company; and in November, 1881, it was engaged in locating
and constructing the road under the contract." It thus appears
by this statement that the road to be constructed in that case
was "by the nearest, cheapest, and most suitable route from
Atlanta, in Georgia, through Alabama, to Columbus, in
Mississippi, for a consideration of $20,000 a mile," and that
it is averred in the pleadings, and admitted by the demurrer,
that in causing of the road to be located by way of Anniston
it was necessary to deflect the same from the nearest, cheapest,
and most suitable route between the designated termini a
distance of five miles, at an additional cost of $100,000. It
appears that this deflection was caused by one who was a
director in and vice president of the extension company, and
also a director in the railway company, in consideration for
which the iron company agreed to give a right of way through
its property, and to convey to the extension company certain
tracts of land, valued at $20,000, and to pay to it $30,000 in
money; and Judge Field very properly held that the contract
was void as immoral in conception and corrupting in tendency;
it being nothing less than a bribe offered by the iron company
to the extension company to disregard its agreement with the
railway company to construct the road by the shortest, cheapest,

and most suitable route. But the quotations from the foregoing decisions make it perfectly apparent that they are in no way applicable to the case at bar, as, in the case at bar, there is no deflection of the route, neither is there any allegation that the bonus was for the personal benefit of any stockholder, officer, or director of the railroad company. In the case of Bestor vs Wathen, 60 Ill. 138, the railroad company made a contract with the firm of Cruger, Secor & Co., by which the latter undertook the construction of the road. The stockholders of this company, together with Bestor, president of the railroad company, and Sweat, a director, entered into a contract with Wathen and Gibson, the defendants, by which the latter, who were the owners of 160 acres of land, agreed that in consideration that the road then being constructed should cross the Illinois Central Railroad where their land was located, the land would be platted into town lots and sold, and after proceeds amounting to $4,800 had been received, a conveyance of an undivided half of the residue should be made to Bestor, the construction company, and Sweat. The road was constructed, and five years afterwards Bestor and the other plaintiffs filed their suit for an accounting, and asked for specific performance of the contract. The court held that the contract was void as against public policy. The principle announced in the foregoing decisions is unquestionably good law, and appellant cites other cases in which the same doctrine has been adhered to.

Appellant in his brief states that there are three classes of decisions to which he desires to call the attention of the court, where contracts of this kind have received legislative sanction, and states that in each of these cases the court, in substance, says, that the contracts are valid, because the Legislature of each state had authorized subscriptions and donations of this kind. Appellee, in reply to the statement of appellant, says: "An examination of all the authorities does not disclose that they are based on any statute whatever"—and

then quotes from the case of L., N. A. & C. R. R. vs Sumner, 106 Ind. 55, 5 N. E. 404, 55 Am. Rep. 719, which has been hereinabove copied. In Missouri Pacific Ry. Co. vs Tygard, 84 Mo. 263, 54 Am. Rep. 97, the syllabus is as follows: "A subscription for building a railroad was made on the conditions that the road should be completed and put into operation to a certain town by a certain date, and that it should locate a station within a specified distance of the courthouse in the town. The road was graded to the town by the appointed time, but was not fully completed until several months later, and in the meantime the company used about a mile of another railroad. Held: (1) That the contract for completion was substantially complied with; (2) that the distance of the station from the courthouse should be measured in a straight line; (3) that the contract for locating the station was lawful." In Cumberland Valley R. R. Co. vs Baab, 9 Watts (Pa.) 458, 36 Am. Dec. 132, the syllabus of the case is as follows: "Subscription of money to induce railway company to locate bridge at a particular point constitutes a valid contract." In First National Bank of Cedar Rapids vs Hendrie, 49 Iowa, 402, 31 Am.Rep. 153, the syllabus of the decision is as follows: "A contract to pay money, in consideration that a railway company will construct its road to a certain point, is valid." In Arkansas Cent. R. Co. vs Smith, 71 S. W. 947, 71 Ark. 189, the first clause of the syllabus is as follows: "A condition in the deed of a right of way reciting that 'for and in consideration of a depot at S.,' etc., is not fulfilled by merely building a side track, and stopping trains for the reception of passengers and freight; no building or platform being erected." In Fayetteville Wagon, etc., Co. vs Kenefick Construction Co., 88 S. W. 1031, 76 Ark. 615, the second clause of the syllabus is as follows: "A note given as a bonus to a railway company stipulated that a part of the consideration was the continuous maintaining of a depot within a town by the company. The company maintained for some

months a freight and passenger depot in the town.    Subsequently the passenger traffic was transferred to the depot of another company in the town, and the former depot was maintained as a freight depot." Held, a compliance with the stipulation." In St. Louis & N. A. R. Co. vs Crandell, 86 S. W. 855, 75 Ark. 89, 112 Am. St. Rep. 42, the first clause of the syllabus is as follows: "Plaintiff proposed to defendant railroad company that he would give a right of way over his land and $1,000 if the railroad station should be erected on an adjoining tract. The offer was accepted, and plaintiff paid $1,000 to the owner of the adjoining tract, who executed a deed to the railroad company.    Plaintiff then gave defendant a deed of the right of way, reciting a consideration of $1, and when the railroad had erected the station both deeds were delivered to it.    Defendant maintained the station, as a passenger and freight station for one year, and then erected a passenger station 500 yards distant, and maintained the original structure solely as a freight depot.    Held, that there was a valid contract between plaintiff and the railroad company for the location of the station on the tract adjoining plaintiff's land, and that plaintiff was entitled to damages for the abandonment of the station as a passenger station."    In the case of Enid Right of Way & Townsite Company vs Lile, 15 Okl. 317, 82 Pac. 810, defendant had given his note for $75 to the Enid Right of Way & Townsite Company, in consideration that the townsite company would procure the location of a railroad station and depot on the tract of land designated as section 30.    The court below held that the contract was void, and the Supreme Court sustained the decision.    The appellee, commenting upon this case, says it is "based on a different state of facts from the case at bar.    The court rendering the opinion said: 'There is nothing in this bill which tends to show this note was given for a subscription.' "    Then adds: "We call the attention of the court to the fact that three of the judges sustained the

opinion of the lower court and three other judges rendered a very strong dissenting opinion, citing Telford vs Chicago, 172 Ill. 559, 50 N. E. 105; Lyman vs Suburban Ry. Co. et al., 190 Ill. 320, 60 N. E. 515, 52 L. R. A. 645; and numerous other authorities much more recent than those cited in opinion." In the case at bar there is no allegation in the complaint that the bonus was given for the personal benefit of any individual stockholder or officer of the railroad company, or any employe, and hence this case, in our judgment, would not be applicable; but, whatever force the decision might have as an authority, it is greatly weakened by the dissenting opinion of the three judges.

Appellant then proceeds to discuss the second head under which he discusses his assignments of error, which second head is as follows: "Where a contract has been entered into, void as against public policy, equity will give relief to a party to the contract asking for its cancellation, even though he stands in pari delicto." Has the doctrine above stated any application to the facts in this case? It appears that the notes and mortgage executed on the 18th day of November, 1904, by the appellant, to W. B. Hudson, John W. Sullins, and Anthony Crafton, as trustees, were assigned on November 21, 1904, to William Kenefick, trustee, and on the same day a contract was entered nto between the said trustees, as parties of the first part, and the defendant William Kenefick Company, as party of the second part. That contract is attached to the plaintiff's complaint, and is as follows: "Exhibit D: This agreement made and entered into in triplicate this 21st day of November, 1904, between W. B. Hudson, John W. Sullins and Anthony Crafton, trustees, parties of the first part, and the William Kenefick Company, a corporation, party of the second part, witnesseth: That, whereas, for and in consideration of the benefits to be derived from the construction of a railroad now being constructed by the William Kenefick Company in a

southwesterly direction from Muskogee, Ind. Ter., into and through the town of Henryetta, Ind. Ter., and, whereas, the various parties interested have executed their promissory notes secured by trust deeds, and their promissory notes and procured certified checks all payable to the order of the parties of the first part to be by them used for the purpose of securing the building of the said railroad into and through the town of Henryetta, and also have signed a contract guaranteeing the right of way and station grounds from Deep Fork into and through the town of Henryetta to the North Fork south of Henryetta, therefore in consideration of the delivery and assignment of the securities above referred to amounting to $20,000.00 to William Kenefick, trustee, ordering said moneys to be paid to him or his order according to the terms thereof and delivering the contract guaranteeing the right of way, it is expressly agreed and understood: First. That the depot and station grounds shall be located in the town of Henryetta at the point heretofore selected by the parties hereto, or at some other point in the town of Henryetta to be agreed upon by said parties or their representatives. Second. The railroad mentioned in this contract as south of Henryetta is the Ft. Smith & Western Railroad, and the connection therewith shall be at, near or within six miles of Dustin, formerly known as Spokogee. Third. The right of way mentioned herein from Deep Fork to North Fork shall not exceed sixteen miles. Said right of way to be 100 feet wide, except as hereinafter mentioned. It is understood that the land for the yards shall be located northeast of the town of Henryetta and shall be 3,000 feet long by 200 feet wide, this to include the 100 feet for right of way. Fourth. It is expressly understood and agreed that if trains are not running on a regular schedule into the town of Henryetta on or before January 1, 1906, then the notes and trust deeds mentioned herein shall become absolutely void, and the trustees or other persons holding the same shall surrender said notes

and trust deeds to the makers, and the trustee or the person holding same or in the event of their failure or refusal so to do, then the parties of the first part, or either of them, may release the said trust deeds of record. Fifth. It is further agreed and understood that if said railroad shall fail to make connection with the Ft. Smith & Western Railroad as above designated on or before September 1, 1906, then the second installments of said notes and other securities shall become absolutely void, and the same shall be surrendered to the makers, and the said parties of the first part, or either of them, or the person holding same, shall release the said trust deeds of record as to said second installment. Sixth. It is understood and agreed that the parties of the first part named herein are to collect the money from the subscribers and settle for the right of way, depot, station grounds and yards, and furnish such assistance to the right of way agents in the way of making contract and procuring deeds and witnesses in condemnation suits as may be necessary, but they shall not be liable for costs of referees and court costs except witnesses; the company paying attorneys fees and other costs and expenses and furnish the proper plats, deeds and contracts for securing said right of way, and also the company agrees to furnish the right of way across such railroad tracks and switches as it is necessary to cross, at its own expense. In witness whereof the parties hereto have signed the foregoing in triplicate the day and date above written. W. B. Hudson, John W. Sullins, Anthony Crafton, Trustees, Parties of the First Part. The Wm. Kenefick Company, per W. L. Stuckey, Its Atty., Parties of the Second Part."

The plaintiff then in his complaint alleges that it was agreed by and between the parties to the foregoing contract that it should contain a provision to the effect that no depot or townsite should ever be constructed or laid out between Henryetta, Ind. Ter., and Dustin, Ind. Ter., or no stop or station should be recognized by the said railroad company,

and that defendant W. L. Stuckey assured said parties of the first part, together with plaintiff, that the defendant William Kenefick would send a written statement and agreement on the following date, to wit, the 22d day of November, 1904, agreeing that no such stations, depots, or townsites should be recognized, constructed, or platted; and plaintiff states the said defendant wholly neglected, declined, and refused to sign and deliver to said plaintiff or to said trustees the said written statement and agreement in accordance with said assurance. Plaintiff states that the said agreement not to erect and construct depot and station at any point between said town of Henryetta and Dustin is void, the same being against public policy, and ought not to be enforced, and that the said promise was the only consideration given by defendants to trustees and to plaintiff for the execution and assignment of said notes and deeds of trust.

An inspection of the contract above set out which is a contract entered into between the trustees, Hudson, Sullins, and Crafton, and the William Kenefick Company, on November 21, 1904, and an inspection of the notes and trust deed executed by appellant to Hudson, Sullins, and Crafton, trustees, on November 18, 1904, will show the contract was reduced to writing, and is complete in every detail, but nothing has been said in writing that a part of this consideration is that no station, side tracks, or turnouts shall be constructed between Henryetta and Dustin, Ind. Ter. It is not alleged that any part of these are left out by fraud, accident, or mistake, but it is alleged that the written contract, complete in every detail, should contain a provision to the effect that no depot should ever be constructed, etc.; that W. L. Stuckey assured said parties, together with plaintiff, that William Kenefick would send an agreement next day, agreeing that no depot should be built between Henryetta and Dustin; that he afterwards refused to send said agreement; and that if he had sent it it would have been void.

It is the contention of the appellees that this written contract is complete, and that the consideration is contractual, and parol testimony cannot be introduced to make another and new contract. Appellant insists that the parol evidence rule only applies between the parties, that a stranger can introduce extrinsic evidence to contradict it. In the case at bar this can only be considered in connection with the allegations of the complaint, and that allegation is that "Stuckey assured said parties of the first part, together with plaintiff, that the defendant Wm. Kenefick would send written statement and agreement on the following date, to wit, the 22d day of November, 1904, agreeing that no such station, depots, or townsites should be recognized, constructed, or platted." And when it was alleged that it was agreed that the contract should contain a provision that no depot or townsite should ever be constructed, etc., this allegation must be taken in connection with the foregoing statement of Stuckey as to the assurance that he would have Kenefick make another agreement the next day. And, besides, W. B. Hudson is the plaintiff in one of the cases in which this brief of appellant is to be considered as filed, and he was no stranger, being a party to the suit.

2 Page on Contracts, c. 56, states the rule on the admissibility of parol evidence to change the terms of a written contract. Section 1189 lays down the rule as follows: "If the parties to a contract have reduced it to writing, they must intend such writing to be the repository of their common intention. It merges all prior and contemporaneous negotiations. Accordingly, a contract in writing complete on its face cannot be contradicted by extrinsic evidence, nor can prior or contemporaneous parol agreements be used to contradict the written contract, so as to substitute for the intention therein expressed that expressed in such oral agreements. To violate this rule and to admit extrinsic evidence of the intention of the parties direct for the purpose of displacing their intention

as shown in the written contract, is 'to substitute the inferior for the superior degree evidence.'" Section 1205 is as follows: "If the consideration appears in the written contract as a contractual term thereof, an oral agreement, whereby an additional or other consideration is provided for, violates the parol evidence rule and is unenforceable. Thus, in a contract for the sale of land, if it specifies the amount which the vendee agrees to pay, an oral contract whereby he agrees to pay more is unenforceable." Section 1207 is as follows: "The parol evidence rule presupposes an action based on a valid contract, and between the parties thereto or those claiming under them. If the issue is as to the existence or validity of the contract, the rule by its very terms has no application, and extrinsic evidence is necessarily admitted to determine such issue, whether such evidence tends to establish the validity or the invalidity of the contract in question." Section 29 of Beach on the Modern Law of Contracts is as follows: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing; and all oral testimony is rejected of a previous colloquium between the parties, or of conversation or declaration at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties. A writing signed by the parties merges in it all parol contracts which precede it, relating to the same subject-matter." And section 32: "The Indiana rule is that a consideration stated upon the face of a written instrument, by way of mere recital, may be explained, varied, or contradicted by parol evidence; but where the stipulation as to the consideration is contractual, as where there is a positive promise to pay a con-

sideration specified, the consideration can no more be varied or contradicted by parol evidence than any other part of a written contract." Section 266, Beach, is as follows: "When a contract is couched in terms which import a complete legal obligation, with no uncertainty as to the object or extent of the engagement, it is, in the absence of fraud, accident, or mistake, conclusively to be presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing. And hence where there is a written warranty on a sale of personal property, no prior or contemporaneous oral warranty can be shown, neither can an oral warranty be shown when the written contract of sale contains no warranty. Whether a written contract fully expresses the terms of the agreement, and, if so, thus excluding all warranties not expressed therein, is a question of construction for the courts." In Insurance Company vs Mowry, 96 U. S. 544, 24 L. Ed. 674, the court says: "All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated. * * * The previous representation of the agent could in no respect operate as an estoppel against the company. Apart from the circumstance that the policy subsequently issued alone expressed its contract, an estoppel from the representations of a party can seldom arise, except where the representation relates to a matter of fact, to a present or past state of things. * * * The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence

others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made.    *    *    *    The learned judge who tried this case in the Circuit Court instructed the jury, in substance, that if they could find, from the language of the agent, that there was an agreement between him and the assured, made before the policy was executed, that the latter should have notice before he should be required to pay the annual premium, then that the company, not having given such notice, was estopped from setting up the forfeiture stipulated by the policy for nonpayment of the premium when due. For the reasons we have stated, we think the court erred in this instruction."

If there had been either in the notes and trust deed executed on November 18, 1904, or in the contract entered into on November 21, 1904, any allusion to this parol agreement, showing that the same was to be made a part of any written agreement, to be written out subsequently and to become a part of the same, we should be of the opinion that the same should be considered as a part of the agreement; but, as alleged in the complaint, it is, in our judgment, an effort on the part of the appellant to have the court make a new contract for the parties, and then declare that contract void. We do not think that the allegation as to the parol agreement stated in the complaint, when taken in connection with the entire contract, can be considered a part of the written contract which the general demurrer would admit. A prohibition not to construct a depot at any particular place, in the future, would be unquestionably void; but we can find, as heretofore stated, no such contract ever having been entered into. The only pretense is that W. L. Stuckey, who signed the contract executed on the 21st day of November, between the trustees, Hudson, Sullins, and Crafton, and the William Kenefick Company, as the attorney for the William Kenefick Company, gave said

trustees the assurance that he would have William Kenefick trustee, make such an agreement the next day, the 22d day of November, 1904. Hence all the authorities cited by appellant to establish the proposition that a court of equity would relieve from the obligations of a contract which was against public policy, and in favor of one of the parties in pari delicto, have no application to this case.

We do not deem it necessary to consider the other heads discussing the assignment of errors, as the case in our judgment is fully presented in the points considered in this opinion.

It is our opinion that the judgment of the court below, in sustaining the demurrer and dismissing the bill, was correct, and it is therefore hereby affirmed.

GILL, C. J., and CLAYTON, J. concur.